# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | |
|---|---|
| MICHAEL E. NEIGHBORS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:12-CV-00056 |
| | ) |
| CAROLYN W. COLVIN[1], | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Michael Neighbors ("Neighbors") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Neighbors alleges that the case should be remanded under sentence four of 18 U.S.C. § 405(g) for consideration of the treating physician's opinion submitted to the Appeals Council.

This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed all issues and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, and the applicable law. I conclude that the treating physician's opinion submitted to the Appeals Council does not constitute material evidence, and thus, remand to the Commissioner is not warranted. As such, I **RECOMMEND DENYING** Neighbors's Motion for Summary Judgment (Dkt. No. 12), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16).

---
[1] Carolyn Colvin became the Acting Commissioner of Social Security on February 14, 2013.

**STANDARD OF REVIEW**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to determining whether substantial evidence exists to support the Commissioner's conclusion that Neighbors failed to demonstrate that he was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Neighbors bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals

the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

In cases such as this, where the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991).

## STATEMENT OF FACTS

### Social and Vocational History

Neighbors was born on August 5, 1968 (Administrative Record, hereinafter "R." at 156), and is considered a younger individual under the Act. 20 C.F.R. §§ 404.1563. Neighbors is insured through December 31, 2013 (R. 18, 169); therefore he must show that his disability began before the end of his insurance period, and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Neighbors completed the ninth grade and later obtained a General Education

Diploma ("GED"). R. 63, 178. Neighbors worked as a heating and air conditioning installer and servicer from 1987 to 2009 (skilled, heavy exertional work). R. 64, 174. Neighbors reported that during the relevant period, he had the capacity to shower, drink coffee, wash dishes and laundry, take out trash, prepare meals, run errands, go shopping, perform small household repairs, and care for his children and pets. R. 194–98.

## Claim History

Neighbors protectively filed for DIB on June 12, 2009, claiming that his disability began on February 19, 2009. R. 156, 169. The state agency denied his application at the initial and reconsideration levels of administrative review. R. 81–82, 92. On November 2, 2010, ALJ Mark A. O'Hara held a hearing to consider Neighbors's disability claim. R. 16. Neighbors was represented by an attorney at the hearing, B. Patrick Agnew, which included testimony from Neighbors and vocational expert, Ashley D. Wells. R. 16.

On February 11, 2011, the ALJ entered his decision denying Neighbors's claims. R. 13. The ALJ found that Neighbors suffered from the severe impairments of a back disorder and cerebral palsy. R. 18. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 18. The ALJ further found that Neighbors retained the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: (1) he could lift and carry ten pounds occasionally and a lesser amount frequently; (2) he could stand or walk about two hours in an eight-hour workday, and sit about six hours in an eight-hour workday; (3) he could occasionally push and pull with the lower extremities; (4) he could not kneel, crouch, crawl, or climb ladders, ropes or scaffolds; (5) he could occasionally stoop, balance, and climb ramps and stairs; (6) he must avoid concentrated exposure to extreme temperatures and vibrations; and (7) he must avoid all exposure to

workplace hazards, including moving machinery and unprotected heights. R. 19. The ALJ determined that Neighbors could not return to his past relevant work as an HVAC foreman (R. 28), but that Neighbors could work as a charge account clerk, telephone information clerk, or food and beverage order clerk, all of which exist in significant numbers in the national and local economies. R. 29. Thus, the ALJ concluded that he was not disabled. R. 29.

After the ALJ's decision, Neighbors submitted to the Appeals Council a medical opinion from his treating physician, Matthew Tatom, M.D., dated April 13, 2011, which the Appeals Council made part of the record. R. 1-4. On September 5, 2012, the Appeals Council denied Neighbors's request for review (R. 1), and this appeal followed.

## **ANALYSIS**

Neighbors argues that the April 13, 2011 opinion of his treating physician, Dr. Tatom, is new and material evidence that warrants remand of the case under sentence four of 18 U.S.C. § 405(g).[2] The regulations permit a claimant to submit "new and material evidence" to the Appeals Council. Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991.) When deciding whether to grant review, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Id.

---

[2] Although Neighbors's brief in support of his Motion for Summary Judgment does not specifically request remand of the case, Neighbors argues that the ALJ erred in discrediting his pain complaints and finding that he can perform a reduced range of sedentary activity. In support of this argument, Neighbors relies predominantly on the April 13, 2011 opinion of his treating physician, Dr. Tatom, which was submitted to the Appeals Council, and was not considered by the ALJ in this case. In the hearing before this court, counsel for Neighbors clarified that they are seeking remand of the case for consideration of that opinion, pursuant to sentence four of 18 U.S.C. § 405(g).

5

When the Appeals Council denied Neighbors's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. As such, this court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings. Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991.) "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence." Davis v. Barnhart, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005)(citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). Thus, when faced with new evidence, a court must reconcile its duty under Wilkins to review the entire record, including the new evidence, to determine if there is a reasonable possibility that it would change the outcome, with its obligation under Smith to abstain from making credibility determinations and resolving factual conflicts. Davis, 392 F. Supp. 2d at 751.

Courts in this district have achieved that balance by reviewing the record as a whole to determine if the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports. If the new evidence creates such a conflict, there is a reasonable possibility that it would change the outcome of the case, and the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. If such conflicts are not present, the case can be decided on the existing record without a remand. Davis, 392 F. Supp. 2d at 751 (citing Bryant v. Barnhart, No. 6:04cv000017, 2005 WL 1804423, *5 (W.D. Va. Jan 21, 2005); Smallwood v. Barnhart, No. 7:03cv00749, slip op. at 2 (W.D. Va. Oct. 19, 2004); Ridings v. Apfel, 76 F. Supp. 2d 707, 709 n. 6 (W.D. Va. 1999); Thomas v. Commissioner, 24 Fed. Appx. 158, 162, 2001 WL 1602103, at *4 (4th Cir. 2001)(unpublished

opinion)); McConnell v. Colvin, No. 2:02cv00005, 2013 WL 1197091, at *7 (W.D. Va. March 25, 2013).

In this case, I find that Dr. Tatom's report is "new" evidence, as it is a treating physician opinion obtained after the date of the ALJ's determination, and it contains opinions with regard to Neighbors's functional limitations not found in the record before the ALJ. New evidence, however, is only material if it creates a reasonable possibility that, upon review of the evidence, the Commissioner would change the *outcome* of his decision—that is, find the claimant disabled and award benefits. Meyer v. Astrue, 662 F.3d 700, 704-05 (4th Cir. 2011) (citing Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)). Remand is not warranted simply because new evidence might change particular elements of the ALJ's decision. The critical inquiry is whether the conclusion itself could be changed. After a thorough review of the record, and for the reasons set forth in detail below, I find that there is no reasonable possibility that Dr. Tatom's report would change the outcome of the case, and thus, the case can be decided on the existing record without a remand.

Neighbors suffers from cerebral palsy ("CP"), a shorter right leg and smaller right foot; gait abnormality; and a back disorder that causes pain. Until 2009, Neighbors's CP was misdiagnosed as muscular dystrophy. R. 295. Throughout the relevant period, Neighbors's treatment for his back impairment and CP was generally routine, conservative and unremarkable, with gaps in treatment.

The relevant records before the ALJ begin on March 5, 2009, when Neighbors saw Colleen Nakamura, P.A, complaining of back and leg pain. Ms. Nakamura ordered x-rays, and prescribed Lortab. R. 286. Neighbors's x-rays showed degenerative disc disease at L5-S1 with

grade III spondylolisthesis of L5 and S1, probably with bilateral spondylolysis of the pars intra-articularis, and scoliosis of the lumbar spine convex to the right. R. 290.

On March 11, 2009, Neighbors followed up with Ms. Nakamura, for "significant low back pain." Neighbors stated that he stopped taking pain medication because it made him feel depressed. R. 284. Physical examination showed significant pain with bending to the lower back, decreased mobility and extension of both legs and ankles. Ms. Nakamura diagnosed back pain and muscular dystrophy and referred Neighbors to orthopedics for his spondylolisthesis and degenerative disc disease. She gave Neighbors a work excuse from March 11, 2009 through March 20, 2009, until he could be evaluated by an orthopedist. R. 284.

On March 20, 2009, Neighbors saw Kamal Chantal, PA-C for low back and leg pain. He noted gradually increasing pain in the past six months in his lower back, radiating into his buttock, back of his thigh and calf. He also noted more discomfort with activity. Ms. Chantal found mild tenderness to palpation over the right and left sides of the lumbar spine; increased discomfort with rotation to the right and left sides, as well as mild discomfort with extension. She found greater discomfort in Neighbors's low back with flexion, and low back pain with straight leg raising bilaterally, greater on the left side. Ms. Chantal also noted some generalized decreased muscle tone noted in the right and left lower extremities. R. 268. Ms. Chantal recommended an MRI, as well as anti-inflammatory and pain medication. R. 270.

On March 27, 2009, an MRI revealed a grade 1 to 2 spondylolisthesis at L5-S1, with severe neural foraminal narrowing, and increased edema in the end plates of L5 and the superior aspect of S1. R. 266.

On March 31, 2009, Neighbors followed up with Ms. Chantal for his bilateral radiculopathy, spondylolisthesis and low back pain. R. 262. Ms. Chantal recommended

scheduling a bilateral L5-S1 nerve root block, and continue pain medication if needed. R. 262.
On April 8, 2009, Neighbors underwent a nerve root block at L5-S1. R. 274. He later claimed that it did not help his symptoms. R. 57.

On May 22, 2009, Neighbors followed up with Ms. Nakamura, who noted that Neighbors had been conservative in his treatment, and that his back pain improved. She noted that he had been doing no lifting, no pushing, no pulling, and that his back pain is significantly better. "He is not having any issues at this time so he cancelled those appointments to have the epidural injections done. The patient's concern is that if he increases his physical activity, the pain is going to get worse so he is not working at this time." R. 282. Ms. Nakamura recommended that Neighbors attempt yoga and stretching. She also stated that Neighbors has a progressive illness, and "there is some possibility that he may need permanent disability." R. 282

On July 31, 2009, Neighbors was examined by neurologist Charles Joseph, M.D., for muscular dystrophy. Dr. Joseph found that Neighbors did not suffer from muscular dystrophy, but instead had CP, which left him with spastic diplegia and right hemiatrophy. Dr. Joseph referred Neighbors to physical therapy for treatment of his CP, recommending an exercise program and/or foot lift or other devises to help. Dr. Joseph believed that Neighbors's back pain was due to his abnormal gait, and needed to be managed by orthopedists. R. 295.

Neighbors attended physical therapy from August 4, 2009 through September 11, 2009. R. 299-300. Neighbors was discharged from physical therapy on September 11, 2009. His therapist noted that Neighbors's range of motion improved, and he was able to perform activities of daily living. The therapist gave Neighbors a right ankle dorsiflexion assist to improve his balance and gait quality, and recommended a home exercise program. R. 307-08.

On September 1, 2009, state agency physician Michael Hartman, M.D., completed a residual functional capacity assessment, and found that Neighbors was capable of a range of sedentary work. Specifically, Dr. Hartman limited Neighbors's ability to push and pull with his lower extremities, found that he could never climb ladders, ropes, scaffolds, kneel, crouch or crawl, and should avoid concentrated exposure to extreme heat, cold, and vibration, as well as all exposure to hazards. R. 80.

On November 19, 2009, Neighbors followed up with Dr. Joseph for his CP. Dr. Joseph noted that Neighbors's back pain was not responding to anti-inflammatory medications, and that Neighbors could not afford epidural injections. Dr. Joseph stated that, from a neurological standpoint, there was nothing more to offer Neighbors. R. 329.

On February 24, 2010, state agency physician Joseph Duckwall, M.D., completed a residual functional capacity questionnaire, and made the same findings as Dr. Hartman. R. 89-93.

On June 8, 2010, Neighbors saw Dr. Tatom for back pain. Dr. Tatom noted that Neighbors recently slipped, twisted and aggravated his back. Dr. Tatom diagnosed low back strain, cerebral palsy, chronic pain. R. 327. He noted that Neighbors was taking ibuprofen and Aleve for pain. R. 328.

On July 20, 2010, Neighbors began another session of physical therapy. He reported increased low back pain and tightness after a fall in his home in June 2010. R. 322. Neighbors claimed difficulty sitting or standing for more than 10 minutes, and that it was painful to bend forward and squat. R. 322. The therapist noted that Neighbors was able to perform his activities of daily living independently, although it was painful to dress and he had difficulty with curbs

and steps. R. 323. On September 2, 2010, Neighbors was given an SI belt, and discharged from physical therapy. R. 320-21.

Based on the above medical evidence, the ALJ entered a decision finding that Neighbors is not disabled. The ALJ found that Neighbors's CP and back disorder were severe impairments. The ALJ generally adopted the opinions of the state agency physicians and found that, even with those severe impairments, Neighbors was capable of a limited range of sedentary work.

Two months later, on April 13, 2011, Dr. Tatom filled out a checklist form, and agreed that Neighbors "has a significant, severe back disorder documented by x-rays and MRI, including severe degenerative disc disease; grade 1 to 2 L5-S1 spondylolisthesis with severe neural foraminal narrowing at that level; bilateral pars defect; increased edema in the end plates of L5 and the superior aspect of S1; anterolistheses of L5 on S1 secondary to pars defect and tight foraminal stenosis bilaterally at L5-S1; chronic lumbosacral strain and chronic back pain. R. 260. Dr. Tatom also agreed that Neighbors has documented cerebral palsy with spastic diplegia and right hemiatrophy affecting his right leg greater than left, a shorter right leg and a smaller right foot; gait abnormality; and a weight of approximately 97 to 100 pounds at a height of 60 inches. R. 260. Dr. Tatom agreed that Neighbors's diagnoses can reasonably be expected to produce the exertional limitations reported by Neighbors; specifically:

> can stand 10 to 12 minutes and then has numbness and pain in his back and legs; can walk about 200 feet before needing to stop or sit; can sit for 10 to 15 minutes at a time and then has low back pain requiring him to get up and move about; has to lie down 3 to 4 times per day for 30 to 45 minutes on his back or side for pain relief; has problems lifting a 8 pound gallon of milk more than once or twice at a time.

R. 260. Notably, these are the limitations claimed by Neighbors; they were not arrived at independently by Dr. Tatom. Dr. Tatom further agreed that, based upon the objective medical evidence and his treatment of Neighbors, it can be said within a reasonable degree of medical

11

certainty that Neighbors is unable to engage in regular sustained work activity for a forty hour work week, and that Neighbors would be unable to work an eight hour work day without lying down several times as needed and moving about to address his pain. R. 261.

The majority of Dr. Tatom's checklist opinion simply restates information in the record before the ALJ; namely, Neighbors's medical diagnoses, the results of his x-rays and MRI, and his subjective statements about his pain. Dr. Tatom does not diagnose Neighbors as suffering from any latent medical condition that the record before the ALJ failed to identify. In fact, Dr. Tatom's opinion contains no new physical findings or diagnoses. The ALJ considered all of the medical conditions noted in Dr. Tatom's report, and found that they constitute severe impairments. R. 18. Thus, the portion of Dr. Tatom's opinion summarizing Neighbors's medical conditions is not new or material evidence.

The ALJ also considered all of Neighbors's claimed functional impairments listed in Dr. Tatom's report. The ALJ, like Dr. Tatom, found that Neighbors's impairments could reasonably be expected to produce those limitations. R. 23. However, the ALJ considered the record as a whole, including the objective medical evidence and the opinions of the state agency physicians, and found that Neighbors's claimed limitations were not entirely credible and were not supported by the objective medical record. Given that the ALJ had considered and rejected those limitations, Dr. Tatom's inclusion of those limitations in his opinion is not likely to change the outcome of the case.

The only new findings contained in Dr. Tatom's opinion are his conclusions that Neighbors could not engage in regular, sustained work activity for a forty hour work week, and could not work an eight hour day without lying down several times and moving about to address his pain. R. 261. Dr. Tatom's opinion contains no explanation or support for these conclusions.

There is likewise no support for these limitations in Dr. Tatom's treatment records. Additionally, as noted by the Commissioner, there is also no indication that Dr. Tatom's conclusions relate back to the relevant time period before the ALJ.

The record before the ALJ contains only one treatment record from Dr. Tatom, dated June 8, 2010. R. 327-28. On physical exam, Dr. Tatom notes "tenderness of the L5 spine," and "paralumbar musculature is nonfocal neurologically." R. 327. His impression is acute and chronic lumbar strain, cerebral palsy, and chronic pain. R. 327. He notes that Neighbors is taking ibuprofen and Aleve. R. 328. There is no indication in Dr. Tatom's treatment note that Neighbors is incapable of performing even a limited range of sedentary work.

There is also no support in the other objective medical evidence in the record for Dr. Tatom's conclusion that Neighbors cannot perform a limited range of sedentary work. Neighbors's treatment for his back impairment and CP was conservative and unremarkable. With regard to his CP, Neighbors wears a brace on his right ankle to allow him to walk without dragging his toes. R. 47. He also wears a belt around his hips to keep his joints from separating. R. 47. He walks with a limp. With regard to his back pain, Neighbors's neurologist found that he was not a candidate for any additional treatment, and that his back pain should be managed through physical therapy and medication. Neighbors was successfully discharged from two rounds of physical therapy, with instructions to continue a home exercise program. R. 308, 321. Otherwise, his back pain was generally treated with over-the-counter medication, such as ibuprofen and Aleve. R. 328.

There are no indications in Dr. Tatom's notes, or the other medical records, that Neighbors's pain is so debilitating that it prevents him from performing even a limited range of sedentary work. In fact, the physical therapists found that Neighbors was capable of activities of

13

daily living, although he had trouble going down steps and with curbs. R. 308. Likewise, Neighbors's back pain appears to be stable with over-the-counter pain medication, as long as he avoids activity. R. 282, 328. Two state agency physicians reviewed the medical records and found that Neighbors was capable of a range of sedentary work. The ALJ carefully reviewed the objective medical evidence and the opinions of the state agency physicians, and agreed that Neighbors is capable of a limited range of sedentary work. Specifically, the ALJ restricted Neighbors to the lightest exertional work category, requiring him to only stand or walk about two hours in an eight hour workday. R. 19. The ALJ also limited Neighbors's ability to push and pull with his lower extremities; climb ladders, ropes or scaffolds, kneel, crouch and crawl. R. 19.

The only support in the record for Dr. Tatom's conclusion is Neighbors's subjective testimony that he needs to lie down multiple times a day. R. 52. As noted above, the ALJ was aware of this assertion by Neighbors, considered it, and found it to be not entirely credible based upon the objective record as a whole. R.21, 23.

Neighbors asserts that because there is no opinion from Dr. Tatom in the record before the ALJ, this opinion fills an "evidentiary gap" of the type described in Meyer, and thus warrants remand. See Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011). In Meyer, the Court remanded the case for consideration of a treating physician opinion submitted to the Appeals Council. Id. The court noted that "[t]he ALJ emphasized that the record before it lacked 'restrictions placed on the claimant by a treating physician,' suggesting that this evidentiary gap played a role in its decision." Id. at 707. However, the Court in Meyer also found that the new treating physician opinion corroborated another physician's opinion that was rejected by the ALJ, and conflicted with other evidence credited by the ALJ. Thus, in reviewing the record as a whole, the Court could not determine if substantial evidence supported the ALJ's denial of benefits. Id. In this

case, Neighbors correctly notes that the ALJ's opinion states that "[n]o treating, examining, or reviewing medical source has opined that the claimant is physically more limited than the above residual functional capacity." R. 28. Thus, arguably, Dr. Tatom's opinion fills that "evidentiary gap." However, contrary to Meyer, Dr. Tatom's opinion does not create the type of conflict in the evidence that warrants remand.

I recognize that under the Meyer and Wilkins decisions, when presented with new evidence, the court must achieve a careful balance of reviewing the record to determine if there is a reasonable possibility that the evidence would change the outcome, with abstaining from credibility and factual determinations. I also recognize that, in order for a new treating physician opinion to have a reasonable possibility of changing the outcome, it must either include an explanation of its findings, or have some basic level of support in the record.

Here, Dr. Tatom's report is a checklist opinion that includes no explanation or support for his conclusions that Neighbors must lie down multiple times a day, and is unable to complete a forty hour work week. Dr. Tatom's conclusions are not supported by his treatment records, the other objective medical evidence, or the other medical opinion evidence in the record. There is simply no support in the record for Dr. Tatom's determination that Neighbors is unable to perform even a limited range of sedentary work. Consequently, I find that Dr. Tatom's report does not present material competing testimony, and does not call into doubt any decision grounded in the prior medical reports. As such, there is no reasonable possibility that the ALJ's decision would be changed upon consideration of this evidence. I therefore find that the evidence presented to the Appeals Council fails the materiality prong of the Wilkins inquiry and does not warrant remand.

**CONCLUSION**

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, considering the record as a whole, substantial evidence supports the ALJ's opinion. Accordingly, I conclude that the Commissioner's decision must be affirmed and the defendant's motion for summary judgment **GRANTED**; and Neighbors's motion for summary judgment **DENIED**.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: October 29, 2013

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge